THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ MELÉNDEZ-VÉLEZ, et al.,

    *Plaintiffs*,

v.

JOSÉ PAGÁN-CARDONA, et al.,

    *Defendants*.

Civ. No. 24-01221 (MAJ)

**OPINION AND ORDER**

## I.    Introduction

This civil rights action arises from the arrest of six minors by local law enforcement. (**ECF No. 1 at 4 ¶ 12–10 ¶ 32**). According to the complaint ("Complaint"), defendants José Pagán-Cardona, Aníbal Centeno-Rosario, and Cristina Cruz-Villegas ("Defendants") are law enforcement officers for the Municipality of Guaynabo. (**ECF No. 1 at 2 ¶ 6–3 ¶ 8**). Plaintiffs are the parents of three minor children who were allegedly detained by Defendants on March 2, 2024. (**ECF No. 1 at 2 ¶¶ 3–5, 4 ¶ 12, 6 ¶¶ 20–25**). Plaintiffs bring this action under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment rights of their minor children. (**ECF No. 1 at 11 ¶ 35**).[1] Plaintiffs seek over five million dollars in damages. (**ECF No. 1 at 12 ¶ 39–13 ¶ 43**).

---

[1] In addition, the Complaint sets forth claims arising from the Fifth and Fourteenth Amendments of the Constitution. (**ECF No. 1 at 11 ¶ 35**). After Defendant moved to dismiss those claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, (**ECF No. 15**), Plaintiffs moved for voluntary dismissal of those claims without prejudice, (**ECF No. 18 at 15**). The Court grants Plaintiffs' request for voluntary dismissal. Plaintiffs' claims under the Fifth and Fourteenth Amendments are hereby DISMISSED without prejudice.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss the Complaint. (**ECF No. 15**). Plaintiffs have responded. (**ECF No. 18**). For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

## II. Factual Background[2]

On March 2, 2024, Plaintiffs' minor children JJMD, FLR, and MATR ("the minors") went to a local baseball field at Parque de Torrimar with their three friends, SVL, GR, and DC. (**ECF No. 1 at 4 ¶ 12**). While at the baseball field, the minors engaged in batting and fielding practice. (**ECF No. 1 at 4 ¶ 13**). As they practiced, the minors were approached by a woman named Ivonne Oquendo-Sánchez ("Ms. Oquendo-Sánchez"). Ms. Oquendo-Sánchez reported to the minors that the windshield to her vehicle, which was parked at a dirt field beyond left field, was broken. (**ECF No. 1 at 4–5 ¶ 14**). The minors denied involvement in any incident that caused damage to the windshield. (**ECF No. 1 at 5 ¶ 15**).

Ms. Oquendo-Sánchez then went to a nearby police station and reported the damage to her vehicle. (**ECF No. 1 at 5 ¶¶ 15–16**). She then returned to the field accompanied by Defendant José Pagán-Cardona ("Officer Pagán-Cardona"), a municipal police officer. (**ECF No. 1 at 5 ¶ 16**). Officer Pagán-Cardona asked the group of minors to identify who would take responsibility for the damage to Ms. Oquendo-Sánchez's vehicle. (**ECF No. 1 at 5 ¶ 16**).

During their conversation with Officer Pagán-Cardona, the minors reported that they had no knowledge or involvement regarding the damage to the vehicle. (**ECF No. 1**

---

[2] For the purposes of resolving the instant Motion, the Court treats all well-plead factual allegations contained in the Complaint as if they were true. *See Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 48 (1st Cir. 2000) (noting that a Rule 12(b)(6) motion should be granted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.").

**at 6 ¶ 19**). When the minors attempted to end the conversation with Officer Pagán-Cardona and resume their baseball game, Officer Pagán-Cardona ordered the minors and their friends to accompany him to the Torrimar Municipal Police Station. (**ECF No. 1 at 6 ¶ 20**). Officer Pagán-Cardona told the minors that they were to remain at the police station until their parents had arrived. (**ECF No. 1 at 6 ¶ 20**).

While the group walked to the nearby police station, the minors were ordered by Officer Pagán-Cardona not to leave. (**ECF No. 1 at 6 ¶ 21**). In addition, the minors were not permitted to leave the station once they had arrived. (**ECF No. 1 at 7 ¶ 25**). After the minors arrived at the station, they were questioned by Officer Pagán-Cardona and Officer Aníbal Centeno-Rosario ("Officer Centeno-Rosario"), while Officer Cristina Cruz-Villegas ("Officer Cruz-Villegas") guarded the door. (**ECF No. 1 at 7 ¶¶ 23–24, 8 ¶ 26**).

In total, the minors spent just under two hours at the station. (**ECF No. 1 at 7 ¶ 22, 9 ¶ 31**). Some time after Plaintiffs arrived at the station, the minors were released into the custody of Plaintiffs. (**ECF No. 1 at 9 ¶ 31**). Just over a week later, Plaintiff Meléndez-Vélez spoke with Officer Pagán-Cardona over the phone; in that conversation, Officer Pagán-Cardona acknowledged that "in this case, from the beginning, there was nothing[.]" (**ECF No. 1 at 9 ¶ 32**).

### III. Legal Standard

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the Complaint "fail[s] to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). To resolve a Rule 12(b)(6) motion, courts must conduct a two-step inquiry.

First, a court will treat all factual allegations set forth in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a plaintiff must "provide the

grounds of his entitlement [with] more than labels and conclusions." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, "[a]ny statements in the complaint that are either legal conclusions couched as facts or bare bones recitals of the elements of a cause of action are disregarded." *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012).

Having credited all well-pleaded factual allegations set forth in the Complaint as true, the Court moves to the second stage of the inquiry: determining whether the Complaint effectively "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted or, instead, whether dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted. *Id*. A complaint that rests only on "bald assertions" and "unsupportable conclusions" will not survive a motion to dismiss. *See Alston v. Spiegel*, 988 F.3d 564, 573 (1st Cir. 2021) (internal quotations omitted). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 596 (1st Cir. 2011).

**IV.     Analysis**

Defendants raise multiple potential grounds for dismissal. First, Defendants assert that Plaintiffs lack standing to prosecute the Complaint on behalf of their minor children. (**ECF No. 15 at 15–17**). Second, Defendants raise the defense of qualified immunity, arguing that Officer Pagán did not violate the Fourth Amendment when he arrested the minors and that the Complaint accordingly fails to allege a cognizable Section 1983 claim. (**ECF No. 15 at 7–11**). The Court will address each issue in turn.

### A. Standing

Defendants assert that Plaintiffs lack standing to prosecute the Complaint on behalf of their minor children. (**ECF No. 15 at 16**). This argument is without merit. To sue on behalf of the minors, Plaintiffs properly rely on so-called "next friend standing" which is a long-established "creation of common law[.]" *Whitmore v. Arkansas*, 495 U.S. 149, 177 (1990) (Marshall, J., dissenting); *see also Maroni v. Pemi-Baker Regional School Dist.*, 346 F.3d 247, 248 (1st Cir. 2003) (describing parents who brought suit on behalf of their minor son as "next friends"); *see also Carson as next friend of O.C. v. Makin*, 979 F.3d 21 (2020) (holding that parents who brought suit under § 1983 on behalf of their minor children as "next friends" had proper standing). "[A]s long as the real party in interest satisfies [constitutional] standing requirements . . . this Court will be presented with an actual case or controversy." *Whitmore*, 495 U.S. at 178 n.6 (Marshall, J., dissenting). Plaintiffs therefore have proper standing to litigate this action on behalf of their minor children. Defendants are correct, however, that an action brought under Section 1983 is personal to the individual allegedly "depriv[ed] of any rights . . . secured by the Constitution." 42 U.S.C. s. 1983; *Quiles ex rel. Proj. Head Start v. Hernandez Colon*, 682 F.Supp. 127, 129 (D.P.R. 1988) ("One person may not sue, nor recover damages, for the deprivation of another person's civil rights."). Since the Complaint does not allege that any of the Plaintiffs were personally "depriv[ed] of any rights," to the extent that Plaintiffs bring any claims to vindicate their personal rights, those claims are dismissed.

### B. Qualified Immunity

To prevail on a claim brought under 42 U.S.C. § 1983, a plaintiff must establish that they were subjected to conduct "attributable to a person acting under color of state

law" and that such conduct "worked a denial of rights secured by the Constitution or by federal law." *Soto v. Flores*, 103 F.3d 1056, 1061–62 (1st Cir. 1997) (citations and quotations omitted). In this case, Plaintiffs allege that the minors' Fourth Amendment rights were violated when they were arrested by Defendants, who were acting under color of Puerto Rico law. (**ECF No. 1 at 11 ¶ 35**).[3] Specifically, Plaintiffs allege that the law enforcement officer that arrested the minors when they were playing baseball at a local field lacked probable cause to perform the arrest. (**ECF No. 18 at 20**). Defendants invoke the doctrine of qualified immunity and move for dismissal of the Complaint. (**ECF No. 15**).

"Qualified immunity shields public officials from personal liability for actions taken while performing discretionary functions." *Ciarametaro v. City of Gloucester*, 87 F.4th 83, 87 (1st Cir. 2023) (internal quotations omitted). "The goal of qualified immunity is to give . . . government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Doe v. Univ. of Mass.*, 145 F.4th 158, 175 (1st Cir. 2025) (internal quotations omitted). This protection applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). In short, under the doctrine of qualified immunity, "all but the plainly incompetent or those who knowingly violate the law" are shielded from suit. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotations omitted). Since the doctrine is intended "to free officials from the concerns of litigation, including avoidance of disruptive discovery[,]" *Iqbal*, 556 U.S. at 685 (internal quotations omitted),

---

[3] Conduct "attributable to a person acting under color of state law" includes conduct attributable to a person acting under color of Puerto Rico law. *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997).

"immunity is to be resolved at the earliest possible stage in litigation." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009); *see also El Día, Inc. v. Governor Rossello*, 165 F.3d 106, 110 (1st Cir. 1999) (qualified immunity defense may be raised in a Rule 12(b)(6) motion to dismiss so long as it is based on assertions found in the complaint).

To determine whether qualified immunity applies, courts engage in a two-part test: "When public officials . . . are sued in their personal capacity for money damages, the doctrine of qualified immunity shields them from pecuniary liability unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Doe v. Univ. of Mass.*, 145 F.4th at 175 (internal quotations omitted). Where a public official raising a qualified immunity defense is "plainly entitled to prevail at the second step" of the analysis, however, the district court has the "discretion to skip the first step[.]" *Perry v. Spencer*, 94 F.4th 136, 171 (1st Cir. 2024) (Lynch, J., concurring in part); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For the reasons set forth below, the Court turns directly to the second step of the inquiry: whether it is "clearly established" that the seizure of the minors was unlawful.

"Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Maldonado*, 568 F.3d at 269 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004)). This inquiry may take one of two forms. First, "in the obvious case," the law may "clearly establish" a right "even without a body of relevant caselaw." *Brosseau*, 543 U.S. at 199 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). The First Circuit has described this type of "obvious case" with "the slavery hypothetical": although "[t]here has never been . . . a Section 1983 case accusing welfare

officials of selling foster children into slavery . . . it does not follow that if such a case arose, the officials would be immune from damages[.]" *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 26 (1st Cir. 2016) (internal quotations omitted); *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) (reasoning that, since "[t]he easiest cases don't even arise[,]" a plaintiff need not always identify factually analogous legal precedent to overcome a defense of qualified immunity) (internal quotations omitted). These cases reflect a sliding scale approach to qualified immunity, one in which "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020) (quoting *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082–1083 (10th Cir. 2015)) (internal quotations omitted). This is intended to function as "a rule that prevents absurd results[.]" *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 39 (1st Cir. 2024). However, the "exception is narrow and cases in which a general constitutional rule will suffice to clearly establish the law are rare." *Johnson v. City of Biddeford*, 665 F.Supp.3d 82, 116 (D. Me. 2023) (citing *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 26 (1st Cir. 2016)) (quotations omitted). Importantly, in the probable cause context, "a body of relevant case law is usually necessary[.]" *Wesby*, 583 U.S. at 64.

In all other cases, "[t]he plaintiff must point to controlling authority, or a robust consensus of persuasive authority, clearly demonstrating the violative nature of [the defendant's] particular conduct." *Ciarametaro*, 87 F.4th at 88 (internal citations and quotations omitted). While "[t]hat authority need not be directly on point . . . a plaintiff also may not define clearly established law at a high level of generality. Instead, the plaintiff must identify authority that is sufficiently analogous to place the . . . question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–742 (2011) (finding

that government official violated no clearly established law and dismissing civil rights action at the motion to dismiss stage)) (internal quotations omitted). Identifying such authority is a "heavy burden" that rests with the plaintiff. *Est. of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022) (internal quotations and citations omitted); *Clemente Properties v. Pierluisi Urrutia*, 693 F. Supp. 3d 215, 251–252 (D.P.R. 2023) (dismissing constitutional claims at the motion to dismiss stage where plaintiffs failed to meet their "burden to demonstrate that the law was clearly established").

### i. The arrest of the minors did not violate clearly established law.

Plaintiffs argue that the minors' "clearly established" Fourth Amendment right to be free from unreasonable seizures was violated when they were arrested without probable cause. (**ECF No. 18 at 20**). To safeguard "[t]he right of the people to be secure in their persons," the Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. AMEND IV. An arrest is the "quintessential 'seizure of the person' under . . . Fourth Amendment jurisprudence." *California v. Hodari D.*, 499 U.S. 621, 624 (1991). "[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). "[P]robable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been or is about to be committed and that the suspect is implicated in its commission." *Morelli v. Webster*, 552 F.3d 12, 21 (1st Cir. 2009).

"The test for probable cause is not reducible to precise definition or quantification." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotations omitted). What is required to meet the probable cause threshold is a "fair probability on which reasonable [people,] not legal technicians, act." *Id.* at 244 (citations and quotations

omitted). This is a "practical and common-sensical standard" that looks to "the totality of the circumstances." *Id*. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Viewed in a light most favorable to Plaintiffs, the Court agrees that facts in the Complaint describe a seizure with the essential attributes of a formal arrest.[4] Accordingly, Plaintiffs argue that the minors "had a clearly established right under the Fourth Amendment to be free from . . . arrest in the absence of probable cause." (**ECF No. 18 at 20**). By analyzing the issue at this level of generality, however, Plaintiffs misapprehend the doctrine of qualified immunity.

Plaintiffs do not argue that this is one of those "obvious" cases in which the law is clearly established despite the absence of factually comparable legal precedent. Nor would that argument prevail. Even if the Court were to assume that the seizure of the minors was unreasonable, the conduct of Officer Pagán-Cardona was certainly not "egregious" enough to "clearly establish" a constitutional violation in the absence of any "factually similar cases." *Irish v. Fowler*, 979 F.3d at 78. Such "egregious" cases generally involve allegations of misconduct by government officials that rise to a level of flagrant abuse.

---

[4] Defendants argue that the seizure was merely an "investigatory stop" such that probable cause was not required. *See generally* (**ECF No. 15**). That argument is without merit. While "[t]here is no scientifically precise formula that enables courts to distinguish between investigatory stops, which can be justified by reasonable suspicion, and other detentions that the law deems sufficiently coercive to require probable cause . . . [t]he conventional method of classification in respect to such detentions consists of asking whether a reasonable man in the suspect's position would have understood his situation, in the circumstances then obtaining, to be tantamount to being under arrest." *United States v. Zapata*, 18 F.3d 971, 975 (1st Cir. 1994) (internal quotations omitted). Accepting the well-plead allegations in the Complaint as true, the minors were interrogated about a misdemeanor offense by a police officer, (**ECF No. 1 at 5 ¶ 16 – 6 ¶ 19**), who ordered them to come to the police station, (**ECF No. 1 at 6 ¶ 20**), where they were held for just under two hours, (**ECF No. 1 at 7 ¶ 22, 9 ¶ 31**), told that they could not leave, (**ECF No. 1 at 6 ¶ 21, 7 ¶ 25**), and interrogated further. (**ECF No. 1 at 7 ¶ 22 – 9 ¶ 30**). On those facts, it would be absurd to argue that the interaction amounted only to an investigatory stop. It is clear as day that "a reasonable [person] in the [minors'] position would have understood his situation . . . to be tantamount to being under arrest." *Zapata*, 18 F.3d at 975.

*Compare McIntyre v. United States*, 336 F. Supp. 2d 87, 123–25 (D. Mass. 2004) (holding that no comparable case law was necessary to conclude that officers violated clearly established rights when an officer aided and abetted the murder of a plaintiff by a private citizen) *with Brosseau v. Haugen*, 543 U.S. 194, 200 (2004) (case where plaintiff was shot in the back while fleeing police officer was "far from the obvious one" where the Fourth Amendment violation was "clearly established" in the absence of comparable precedent). Here, in contrast, the Complaint "presents a unique set of facts" under which the alleged unlawfulness of the arrest is not readily apparent. *See White v. Pauly*, 580 U.S. 73, 79–80 (2017) (internal quotations omitted). Furthermore, the Supreme Court has "stressed that the specificity of the rule is especially important in the Fourth Amendment context" such that "a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause." *Wesby*, 583 U.S. at 64. Accordingly, Plaintiffs must identify legal authority clearly establishing that, under specific circumstances closely analogous to the facts alleged in the Complaint, a law enforcement officer lacks probable cause to make an arrest.[5]

---

[5] The Court acknowledges that there is dissonance between this rule and the conventional wisdom that probable cause "is a fluid concept … not readily, or even usefully, reduced to a neat set of legal rules[.]" *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see also United States v. Winchenbach*, 197 F.3d 548, 555 (1st Cir. 1999) ("In the last analysis, probable cause requires practical, context-specific determinations, made case by case, that give due weight to the totality of the circumstances"). How can prior cases furnish "clearly established law" in an area of doctrine that is conceptually "fluid" and susceptible only to "case by case" determinations dictated by "the totality of circumstances"? This critique of qualified immunity has been made before. *See Anderson v. Creighton*, 483 U.S. 635, 656 n.12 (1987) (Stevens, J., dissenting) (arguing that the "clearly established law" requirement of qualified immunity should not apply to areas where "an official's conduct is not susceptible to a determination that it violated clearly established law because it is regulated by an extremely general and deeply entrenched norm, such as the command of due process or probable cause"). Yet the dissenting view presented by Justice Stevens in *Creighton* is not good law: with respect to probable cause determinations, a plaintiff seeking to overcome a defense of qualified immunity generally must identify "clearly established law" that is closely analogous to the facts of their case. *See Anderson v. Creighton*, 483 U.S. 635, 644 (1987); *Wesby*, 583 U.S. at 64.

Plaintiffs fail to identify legal authority that is "sufficiently analogous" to the facts of this case so as "to place the . . . question beyond debate." *Ciarametaro*, 87 F.4th at 88. Where Plaintiffs attempt to describe the alleged unlawfulness of the arrest at a greater level of specificity, they simply fail to identify any "clearly established law" on point. First, Plaintiffs argue that the minors were arrested for conduct which does "not amount to a crime, just to an accident in which the victim is partly at fault for parking next to the outfield of a baseball field." (**ECF No. 18 at 18**). That is not accurate: causing damage to the personal property of another is a misdemeanor offense in Puerto Rico, *see* 33 L.P.R.A. § 5268, and that offense does not require a showing of specific intent. *See* 33 L.P.R.A. § 5036. Second, Plaintiffs argue that Officer Pagán-Cardona lacked probable cause to arrest multiple individuals under circumstances suggesting that only one person committed the crime. (**ECF No. 18 at 12**). Plaintiffs identify no cases that stand for this principle. Moreover, existing precedent cuts in the other direction: "probable cause to believe one person committed a crime by definition does not foreclose the possibility that probable cause would also exist to believe another person committed the same or a parallel crime." *Karamanoglu v. Town of Yarmouth*, 15 F.4th 82, 88 (1st Cir. 2021). Third, Plaintiffs argue that the arrest was unlawful because the civilian complaint made to the police was speculative. (**ECF No. 18 at 12**) ("No one identified any of the minors as the culprit of the broken windshield, just everyone assumed that because they were playing baseball in a field dedicated to that purpose, a stray baseball must have been the cause of the broken windshield of a vehicle that had been parked in the wrong location"). But Plaintiffs have identified no clearly established law standing for the proposition that a civilian complaint that fails to identify a perpetrator with certainty or precision is insufficient to establish probable cause for the arrest of a potential suspect. Once again, existing precedent cuts in

the other direction, affording a presumption of reliability to civilian complaints. *B.C.R. Transp. Co. v. Fontaine*, 727 F.2d 7, 10 (1st Cir. 1984) (noting that "probable cause determinations predicated on information furnished by a victim are generally considered to be reliable"); *Deaton v. Town of Barrington*, 100 F.4th 348, 356–57 (1st Cir. 2024) (explaining that a "bare accusation by [a] victim can be enough to support probable cause" and that "the primary inquiry . . . is whether there is any evidence that the officers acted unreasonably when they determined that [the victim's] accusation was credible") (internal quotations omitted); *United States v. Merritt*, 945 F.3d 578, 585 (1st Cir. 2019) (law enforcement officers are not always required to independently corroborate a tip in order to establish probable cause).

Next, Plaintiffs argue that the arrest of the minors was unlawful because Officer Pagán-Cardona subjectively believed that "there was nothing" to incriminate the minors. (**ECF No. 1 at 9 ¶ 32**); (**ECF No. 18 at 13**). This argument is also a dead end: probable cause is an objective standard under which an officer's subjective motivations or beliefs do not affect the analysis. *Deaton*, 100 F.4th at 357 ("The question of probable cause, like the question of reasonable suspicion, is an objective inquiry. The actual motive or thought process of the officer is not plumbed.") (internal quotations omitted).

Even if the arrest of the minors may have violated local law, plaintiffs'1983 claim nonetheless fails. Under Rule 11 of the Puerto Rico Rules of Criminal Procedure, a law enforcement officer may not execute a warrantless arrest for a suspected misdemeanor offense where that offense was not committed in their presence. 34 L.P.R.A. Ap. II, R. 11(a)–(c). However, Section 1983 provides only "a method for vindicating federal rights[.]" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted). A claim that a public official violated local law is therefore not actionable under Section

1983. *See, e.g., Gardner v. Vespia*, 252 F.3d 500, 503 (1st Cir. 2001) (upholding dismissal of Section 1983 claim where claimant failed to allege the violation of a federal right: "even if [plaintiff] is correct that [defendant] violated state law . . . [plaintiff] simply has no federal right to demand that [defendant] stay within the confines of state law"). Nor is there any clearly established federal precedent holding that a warrantless arrest for a suspected misdemeanor offense is unconstitutional where the offense is not committed in the presence of the arresting officer. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11 (2001) ("we need not, and thus do not, speculate whether the fourth amendment entails an "in the presence" requirement for purposes of misdemeanor arrests"); *Cabrera-Negron v. Municipality of Bayamon*, 419 F. Supp. 2d 49, 57 (D.P.R. 2006) (dismissing Section 1983 claim where plaintiff alleged that he was unlawfully subject to an arrest for a misdemeanor offense not committed in the presence of the arresting officer). Since this alleged violation of Rule 11 would be a violation "of Puerto Rico law, and not of [a clearly established] . . . federal law[,]" Plaintiffs have failed to "provide the necessary underlying foundations for a Section 1983 claim." *Cabrera-Negron*, 419 F. Supp. 2d 49, 57 (D.P.R. 2006).

> ii. **The length of time that the minors were held in police custody did not violate clearly established law.**

Plaintiffs also argue that Defendants violated "clearly established" constitutional law by subjecting the minors to an "unreasonably prolonged or intrusive investigative detention." (**ECF No. 18 at 20**). For support, Plaintiffs rely on *Soukaneh v. Andrzejewski*, a Second Circuit case where the court held that a police officer violated "clearly established" Fourth Amendment law by handcuffing the plaintiff in the back of a police cruiser for over a half hour "in the context of a traffic stop" where "the officer did

not have "even arguable probable cause to handcuff, detain, and conduct a de facto arrest[.]" 112 F.4th 107, 123–124 (2d Cir. 2024).[6] Plaintiffs assert that this "clearly establishes" that their comparatively long, approximately two hour period of detention at the police station constituted an "unreasonably prolonged or intrusive investigative detention." (**ECF No. 18 at 20**). The Court disagrees.

As discussed above, there is no clearly established law holding that Officer Pagán-Cardona lacked probable cause to arrest the minors. Under the doctrine of qualified immunity, therefore, Officer Pagán-Cardona may not be held personally liable for any "seizure" for which probable cause would be a sufficient justification under the Fourth Amendment. *See Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir. 1992) (a police officer sued for conducting warrantless seizure "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed"). Since "[t]he standard for arrest is probable cause," Officer Pagán-Cardona cannot be held personally liable for subjecting the minors to an arrest. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). This case is therefore distinguishable from *Soukaneh*, where the Second Circuit expressly held that the officer conducting the stop lacked even "arguable probable cause" to expand the scope of a traffic stop beyond a limited investigative detention. *Soukaneh*, 112 F.4th at 125. In this case, because there is no law clearly establishing that Officer Pagán-Cardona lacked probable cause to execute an arrest, the holding of *Soukaneh* is not applicable.

---

[6] Where Plaintiffs cite to *Soukaneh*, they note that the relevant quotation provided from that case was quoting from *Gilles v. Repicky*, 511 F.3d 239, 247 (2d Cir. 2007). *Repicky* is not applicable to the facts of this case for the same reasons that *Soukaneh* is not: in each of those cases, the Second Circuit squarely concluded that the arresting officer lacked "arguable probable cause" and that the officer was therefore permitted to engage in no more than a limited investigative stop. *Repicky*, 511 F.3d at 247; *Soukaneh*, 112 F.4th at 125.

In the case of arrests, a person may be held in police custody for up to 24 to 48 hours until either a probable cause hearing must be held or the arrestee must otherwise be released. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57–58 (1991) (declining to adopt a "24-hour rule" requiring that arrested persons receive a probable cause hearing or otherwise be released within 24 hours of their arrest, but holding that such opportunity must be afforded no later than 48 hours after arrest). The approximately two hours that the minors were held in police custody did not violate even the 24-hour rule that the Supreme Court has declined to adopt. Accordingly, the Court finds that the length of time that the minors were held in police custody did not violate "clearly established" law.[7]

### C. Supplemental Jurisdiction

Plaintiffs only remaining claims arise from Puerto Rico law. (**ECF No. 1 at 10–12 pp. 34-38**). Under 28 U.S.C. Section 1367, a "district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction[.]" *Signs for Jesus v. Town of Pembroke, NH*, 977 F.3d 93, 114 (1st Cir. 2020). Given the fact that no federal question remains, the Court declines to exercise supplemental jurisdiction over the remaining claims arising from Puerto Rico law. Accordingly, Plaintiffs' remaining claims are **DISMISSED** for lack of jurisdiction.

### V. Conclusion

For the reasons set forth above, the Court finds that Defendants are entitled to qualified immunity. Accordingly, the Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED** with prejudice.

---

[7] Because the claims against Officer Centeno-Rosario and Officer Cruz-Villegas are premised on the same theory – i.e. that Defendants lacked probable cause to arrest the minors and hold them for approximately two hours at the police station – those claims are also dismissed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of September 2025.

<u>***/s/ Maria Antongiorgi-Jordan***</u>
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**